# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | |
|---|---|
| JENNIFER TAYLOR<br><br>　　　Plaintiff,<br><br>　　　v.<br><br>EXXONMOBIL IRAQ LTD.,<br>EXXONMOBIL OIL CORP. and<br>EXXONMOBIL DEVELOPMENT CO.<br><br>　　　Defendants. | Civil Action No.<br><br>4:14-CV-2881<br><br><br>*Jury Trial Requested* |

## COMPLAINT

Plaintiff Jennifer Taylor, by and through undersigned counsel, for her Complaint against defendants, ExxonMobil Iraq Limited, ExxonMobil Oil Corp., and ExxonMobil Development Co., (herein collectively, Defendants or "ExxonMobil Iraq"), alleges as follows:

## JURISDICTION AND VENUE

1. This Court has jurisdiction over the federal claims of the plaintiff in this action pursuant to 28 U.S.C. Section 1331, because the subject matter of Taylor's claims are premised on Title VII of the Civil Rights Act of 1964, 42 U.S.C. Section 2000e *et seq.*, as amended by the Pregnancy Discrimination Act.

1

2. Prior to instituting this suit, Taylor filed administrative claims with the Equal Employment Opportunity Commission ("EEOC") alleging pregnancy discrimination by ExxonMobil Iraq and ExxonMobil Oil Corp.

3. The EEOC was unable to successfully conciliate the claim and issued a right-to-sue letter dated July 9, 2014 which was received on or after July 11, 2014. This Complaint is filed within 90 days after receipt of said letter.

4. Venue is proper in this Court pursuant to 42 U.S.C. Section 2000e-5 as, upon information and belief, the employment records relevant to the unlawful employment practice are kept within this judicial district, and the defendants' principal office is located within this judicial district.

**PARTIES**

5. Plaintiff Jennifer Taylor was employed as a Security Intelligence Analyst by subcontractors of ExxonMobil Iraq, first Fircroft, Inc., from January 2012 until May 2013, and then Air Energi Group, from May until December 2013.

6. While Taylor was nominally employed by, and paid through, ExxonMobil Iraq's staffing companies Fircroft, Inc., and later Air Energi Group, she was an employee of ExxonMobil Iraq.

7. Defendant ExxonMobil Iraq Ltd. is a Bahamian corporation located in Nassau, Bahamas.

8. Defendant ExxonMobil Oil Corp. is a New York corporation, with its principal office in Houston, Texas at 4500 Dacoma St., Houston, TX 77092.

9. Defendant ExxonMobil Business Development Co. is a Delaware corporation, with its office in Houston, Texas at 4500 Dacoma St., Houston, TX 77092.

**FACTS**

10. On Janurary 9, 2012, Fircroft, Inc. hired Taylor to work as a Security Intelligence Analyst, supporting ExxonMobil Iraq's West Qurna 1 oil field project.

11. When Taylor was hired, she was trained by supervisors employed by ExxonMobil Oil Corp. and ExxonMobil Business Development Co.

12. As a Security Intelligence Analyst, Taylor's supervisor was ExxonMobil Iraq Security Manager Alan Moorcroft.

13. Taylor worked a schedule set by ExxonMobil Iraq supervisors at the location where Air Energi Group hired her to work, a premises controlled by ExxonMobil Iraq. ExxonMobil Iraq supervisors reviewed and evaluated Taylor's work.

14. Other than her ability to take unpaid sick days, Taylor had no ability to control when, where, or how she performed her job.

15. ExxonMobil Iraq furnished the tools, materials, and equipment that Taylor used to perform her job as an analyst.

16. Taylor and ExxonMobil Iraq had a continuing relationship, as Taylor worked for ExxonMobil Iraq from January 2012 until she was terminated in December 2013.

17. ExxonMobil Iraq had the right to assign Taylor additional work, and ExxonMobil Iraq set the hours and duration of Taylor's work.

18. Air Energi Group paid Taylor a set salary for each day of work, not by job or work performed.

19. Taylor did not have any authority to hire or pay assistants, nor any role in hiring or managing co-workers.

20. Taylor's work was part of the regular business of ExxonMobil Iraq in supporting its oil fields in Iraq; ExxonMobil Iraq is in business; while Taylor was not engaged in any occupation or business distinct from her employment with ExxonMobil Iraq.

21. Taylor was considered an independent contractor for tax purposes.

22. ExxonMobil Iraq had the right to discharge Taylor.

23. As an analyst, Taylor primarily worked from an office in Dubai, United Arab Emirates. From her office, Taylor performed the work of a normal office employee, completing essentially all tasks through her phone or computer.

24. In the first year and a half of Taylor's employment with ExxonMobil Iraq, she travelled to Iraq on four occasions, staying in the country for between two and four days on the four trips.

25. Before analysts could be sent into Iraq, ExxonMobil Iraq had to obtain the approval of superiors employed by ExxonMobil Oil Corp. and ExxonMobil Business Development Co. located at the corporate offices in Texas.

26. While working in Dubai, Taylor received training and was responsible for upholding policies of ExxonMobil Oil Corp. and Exxonmobil Business Development Co.

27. In her trips to Iraq, Taylor performed the same work she performed in Dubai, performing computer-based work from her room.

28. In Basra, Iraq, Taylor performed all of her work from her computer in her room. In Baghdad, Taylor attended a couple meetings with other analysts in the International Zone of Baghdad.

29. Taylor was an experienced and successful employee, and was respected by her superiors and peers at ExxonMobil Iraq.

30. In July 2013, while she was on leave in the United States, Taylor learned that she was pregnant.

31. Taylor emailed her supervisor, ExxonMobil Iraq Security Manager Allen Moorcroft, to inform him of her pregnancy and to request that he delay her

return date to Dubai for a week to allow her to see her physicians in the United States.

32. Moorcroft congratulated Taylor on her pregnancy and stated that it caused "[n]o issues at all . . . ." He also joked that maternity units have "Wi-fi installed so you will still be able to keep up with the workload during contractions."

33. Despite Moorcroft's initial assurances, two weeks later he emailed Taylor and warned that the company may have a problem with paying an employee who could not deploy to Iraq.

34. Moorcroft claimed that ExxonMobil Iraq had a firm policy that prevented pregnant women from entering Iraq. Moorcroft stated this was because Iraq did not have adequate medical facilities in case Taylor had complications. Further, he said that because of this policy, she would be unable to go into Iraq until mid-way through 2014, and that the company would not allow her to maintain her employment that long.

35. Moorcroft offered to play the "humanitarian card" and extend her employment for as long as the company would allow.

36. Taylor asked that she her position be "reorganized" so that she could work either from Dubai or the United States, but her supervisors stated that this would be impossible.

37. The majority of her work in Iraq had been performed from her room on a computer, and could have been just as easily accomplished in Dubai, and she had only been in Iraq four times in eighteen months of employment.

38. Taylor suggested that she could attend any meetings in Baghdad via Skype or a similar teleconference method, and that she could perform the remainder of her work from her office in Dubai.

39. Moorcroft and other supervisors refused Taylor's requests for accommodations that would allow her to permanently keep her position despite her pregnancy.

40. However, Moorcroft stated that Taylor may be able to find a position during the company's next fiscal year and promised to extend her employment while he could.

41. Taylor continued working from her Dubai office.

42. In September 2013, in response to Taylor's request for a couple weeks off in November, Moorcroft informed Taylor that he had planned to find a replacement for her around November.

43. After Taylor informed him that she would be able to work through Christmas, Moorcroft told her that he would not look to replace her until the end of December 2013.

7

44. ExxonMobil Iraq cancelled Taylor's contract at the end of December 2013.

45. On January 1, 2014, Taylor returned to the United States.

46. Each defendant is engaged in industry affecting commerce, and each have at least fifteen employees.

47. ExxonMobil Iraq's operations are interrelated with both ExxonMobil Oil Corp. and ExxonMobil Business Development Co. and the control of labor and employee relations are centralized in ExxonMobil Oil Corp.'s and ExxonMobil Business Development Co.'s Texas offices.

48. This interrelation and centralization of control is evidenced by Taylor's initial hiring by supervisors from ExxonMobil Oil Corp. and ExxonMobil Business Development Co. in Texas, and her training in Texas.

49. ExxonMobil Iraq is managed by ExxonMobil Oil Corp. and ExxonMobil Business Development Co.

50. This management is evidenced by the requirement that ExxonMobil Iraq obtain permission to send analysts like Taylor into Iraq. It is apparent that the day-to-day decisions of ExxonMobil Iraq were controlled by the corporate headquarters of ExxonMobil Oil Corp. and ExxonMobil Business Development Co.

51. Upon information and belief, ExxonMobil Oil Corp. holds a controlling financial interest in ExxonMobil Iraq.

52. Upon information and belief, both defendants ExxonMobil Oil Corp. or ExxonMobil Business Development Co. control foreign defendant ExxonMobil Iraq.

## CAUSE OF ACTION

### COUNT ONE
### PREGNANCY DISCRIMINATION
### [Title VII, 42 U.S.C. § 2000e *et seq.*]
### (Against All Defendants)

53. Plaintiff re-alleges and incorporates all allegations of this Complaint as if fully set forth herein.

54. Defendants are in business affecting commerce and each employs more than fifteen employees.

55. Upon information and belief, both or either defendant ExxonMobil Oil Corp. or ExxonMobil Business Development Co. control foreign defendant ExxonMobil Iraq.

56. Plaintiff Taylor was pregnant during her employment with Defendants.

57. By their acts and omissions alleged above, Defendants intentionally deprived Plaintiff of equal employment opportunities, and otherwise adversely

9

affected her status as an employee, and then terminated her employment on the basis of Plaintiff 's pregnancy, in violation of 42 U.S.C. § 2000e-2.

58. As a direct, proximate, and foreseeable result of Defendants' unlawful conduct, Plaintiff has suffered, and will continue to suffer, a loss of wages and salary, bonuses, compensation, employment benefits, career path opportunities, and expenses, in an amount to be proved at trial.

59. As a direct, proximate, and foreseeable result of Defendants' unlawful conduct, Plaintiff has suffered, and will continue to suffer, generally physical, mental, and psychological damages in the form of extreme and enduring worry, suffering, pain, humiliation, embarrassment, mental anguish, and emotional distress, in amounts within the jurisdictional limits of this Court, to be proved at trial.

60. In acting as alleged above, Defendants acted maliciously, fraudulently, despicably, and oppressively, with the wrongful intention of injuring Plaintiff, from an improper motive amounting to malice, and in conscious disregard of Plaintiff's rights. Plaintiff is entitled to recover punitive damages from Defendants in amounts to be proved at trial.

61. As a result of Defendants conduct as alleged herein, Plaintiff is entitled to reasonable attorneys' fees and costs of suit as provided for by 42 U.S.C. § 2000e-5(k).

## JURY DEMAND

62. Plaintiff demands a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, Jennifer Taylor, prays for the following relief:

Entry of judgment in favor of Plaintiff and against Defendants for

   a. Back pay;

   b. Front pay;

   c. Compensatory damages;

   d. Punitive damages;

   e. Reasonable attorneys' fees and court cost associated with this suit;

   f. Awarding prejudgment interest, costs and disbursement as appropriate herein; and

   g. Other such relief as may be appropriate to effectuate the purposes of Title VII and as this Court and jury deems equitable, appropriate, and just.

///

///

///

///

///

///

Respectfully submitted,

*/s/ Charles H. Peckham*

_____
Charles H. Peckham
TBN: 15704900
FBN: 15770
cpeckham@peckhampllc.com

Mary A. Martin
TBN: 00797280
FBN: 12272
mmartin@peckhampllc.com

PECKHAM, PLLC
Two Bering Park
800 Bering Drive, Suite 220
Houston, Texas 77057
(713) 574-9044
(713) 493-2255 – facsimile

**OF COUNSEL:**

/s/ Jack B. Jarrrett
_____
Jack B. Jarrett
*Pro Hac Vice to be submitted*
Va. Bar # 86176
jjarrett@spigglelaw.com

THE SPIGGLE LAW FIRM, PLLC
4830B 31st St., S.
Arlington, Virginia 22206
(202) 449-8527 (phone)
(202) 540-8018 (fax)

**COUNSEL FOR PLAINTIFF**